# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CHRISTOPHER T. PHELPS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 08-cv-7132 |
| ) | |
| P. MARTIN, Correctional Lieutenant, ) | |
| PINKSTON (#5234), Correctional Sergeant, ) | Judge Robert M. Dow, Jr. |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Christopher T. Phelps, currently an inmate at the Williamson County Jail, brings this *pro se* action pursuant to 42 U.S.C. § 1983. Plaintiff alleges that while he was incarcerated at Stateville Correctional Center, Defendants Correctional Lieutenant Phillip Martin and Correctional Sergeant Harold Pinkston were deliberately indifferent to his serious medical needs by denying him a low bunk and a cell on a low gallery. Because he was unable to negotiate the stairs, he missed lunch and dinner for seven days. Defendants have filed a motion for summary judgment [19] arguing that Plaintiff failed to exhaust his administrative remedies before filing this action. Plaintiff has responded to the motion. For the following reasons, the Court grants in part and denies in part Defendants' motion for summary judgment.

**I.    Facts**

Plaintiff injured his knee while at Stateville. He saw a doctor on January 9, 2008, who issued permits for crutches, a low bunk, and a low gallery housing assignment. Cmplt. ¶¶ 1-2. Plaintiff showed Defendant Martin the medical orders and expressed fear for his safety and doubt that he could climb four flights of stairs. *Id.* ¶ 4. However, Martin refused to change Plaintiff's cell assignment to comply with the medical permits. *Id.*

Martin threatened to write Plaintiff a disciplinary ticket and to place him in segregation if he did not go to his assigned cell. *Id.* ¶ 7. Martin also handcuffed Plaintiff to his crutches. *Id.* ¶ 8. Plaintiff pleaded with Martin not to place him in segregation, and Martin told him that if he went to the cell and slept on the floor for one more night, he would leave a note for the day shift to make the cell change. *Id.* ¶¶ 9-10. Plaintiff then went to his assigned cell. *Id.* ¶ 11.

The next day, Plaintiff asked an inmate worker and gallery officer to ask Defendant Pinkston about the cell change. *Id.* ¶ 12. Both informed Plaintiff that Pinkston would not make the change. *Id.* ¶ 13. Two inmates assisted Plaintiff down the stairs during the chow hall lunch line, but Plaintiff was too exhausted to continue to the chow hall. *Id*. ¶ 14. Plaintiff asked Pinkston about the doctor's orders; however, Pinkston refused to change Plaintiff's cell. *Id.* ¶ 16.

Later, Plaintiff fell down the stairs and incurred further injuries. *Id.* ¶ 17. He was taken to the Health Care Unit and released on January 11, 2008. *Id.* ¶¶ 19-20. Defendants still refused to move Plaintiff to another cell. *Id*. ¶ 21. Because he could not get up and down the stairs, Plaintiff went without lunch and dinner for seven days. *Id.* ¶ 22.

On January 18, 2008, the doctor extended Plaintiff's medical permits. *Id.* ¶ 23. Martin escorted Plaintiff from the doctor's appointment and informed Pinkston to move Plaintiff to another cell. *Id.* ¶ 24. Plaintiff's was then moved to a cell consistent with the medical permits. *Id.* ¶ 25.

On January 23, 2008, Plaintiff filed a grievance in regard to Defendants' failure to comply with the medical permits. Def.'s Exh. B; Pl.'s Exh. A. On March 10, 2008, the Grievance Officer received, reviewed, and denied Plaintiff's grievance. Df's Exh. C; Pl's Exh. B. On March 14, 2008, the Chief Administrative Officer concurred, and on March 20, 2008, Plaintiff indicated that he planned to appeal that decision. *Id.*

On March 20, 2008, Plaintiff sent a letter to his mother, asking her to make copies of the grievance and other documents and send the original to the Administrative Review Board (ARB). Pl.'s Exh. C. On April 14, 2008, Plaintiff's mother mailed those documents to the ARB. Pl.'s Exh. D. Plaintiff also asked his counselor for a copy of his grievance, which was given to him on April 7, 2008. Pl.'s Exh. E, referencing his motion to present evidence, filed May 25, 2009.[1] Plaintiff states that on April 8, 2008 he placed his grievance in an envelope addressed to the ARB and placed it in the bars of his cell. Pl.'s Exh. F. On July 14, 2008, October 1, 2008, and December 12, 2008, Plaintiff wrote letters to the ARB inquiring about the status of his appeal. Pl.'s Exhs. G, H, and J. On April 27, 2009, Plaintiff sent a complaint to the Governor's Office regarding unanswered grievances. Pl.'s Exh. L. On May 13, 2009, the ARB wrote Plaintiff stating that the Governor's Office had forwarded his complaint to them, that their records indicated that the ARB had never received the grievance, and that the issue would not be addressed further because the time frame for review had passed. Pl.'s Exh. M.

On May 5, 2009, Plaintiff requested that the ARB respond to his grievance. Pl.'s Exh. N. On May 28, 2009, the ARB replied that the grievance had not been submitted in the proper timeframe and that there was no record of a prior grievance from Plaintiff. Def.'s Exh. D; Pl.'s Exh. Q. Defendants have also proffered the affidavit of Sherry Benton, an ARB chairperson, who stated that, at the request of the Attorney General's Office, she searched the ARB records regarding Plaintiff and found that Plaintiff did not file or appeal a grievance in accordance with

---

[1] Although the Court denied Plaintiff's motion for leave to file attached documents to the complaint on June 29, 2009, the Court advised Plaintiff that he should attach these documents to his response to the motion for summary judgment. Plaintiff has requested that the Court review his earlier motion because he no longer has copies of the documents. Pl's Exh. E. The Court will consider these documents.

3

departmental rule 504 regarding medical treatment, staff misconduct, or the denial of food while at Stateville Correctional Center in 2008. Def's Exh. A.

## II. Analysis

### A. Legal Standard on Summary Judgment

Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); see also *Lewis v. Holsum of Ft. Wayne, Inc.*, 278 F.3d 706, 709 (7th Cir. 2002) ("If the nonmoving party fails to make a sufficient showing on an essential element of her case, the moving party is entitled to judgment as a matter of law because 'a complete failure of proof concerning an essential element of the [nonmovant's] case necessarily renders all other facts immaterial.'" (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). In order to present a genuine issue of material fact, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* at 587 (citing *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

The party moving for summary judgment has the initial burden of submitting affidavits and other evidentiary material to show the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 325. Once the moving party has sustained the initial burden, the opposing party may not rest upon the mere allegations or denials of the pleadings, but instead must come forward

4

with specific evidence, by affidavits or as otherwise provided in Rule 56, showing that there is a genuine issue for trial. *Id*. at 324.

B.  **Exhaustion Analysis**

Defendants argue that Plaintiff failed to exhaust his administrative remedies in regard to his claim that Defendants denied him a low bunk and a low gallery assignment despite a doctor's permit and that he never filed a grievance in regard to his claim that he went without lunch and dinner for seven days. Plaintiff concedes in his response that he did not file a grievance concerning the alleged deprivation of food and asks that the claim be dismissed. The Court accordingly will consider only Plaintiff's claim of deliberate indifference to his serious medical needs.

Illinois Department of Corrections ("IDOC") regulations set out the procedures that "offenders" must follow for the "Filing of Grievances" in Illinois Administrative Code § 504.810. Those procedures first require an inmate to attempt to resolve grievances through his counselor. 20 Ill. Admin. Code § 504.810(a). If that step is unsuccessful, the inmate may file a written grievance on a specified form within 60 days of discovery of the incident or problem giving rise to the grievance unless good cause can be shown for extending that period. *Id*. The grievance form must be addressed to the Grievance Officer ("GO") and "deposited in the living unit mailbox or other designated repository." 20 Ill. Admin. Code § 504.810(b). The grievance should "contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint." *Id*.

A GO provides the initial review of grievances. 20 Ill. Admin. Code § 504.830(a). If the GO does not deem the grievance to be without merit, the regulations (20 Ill. Admin. Code §

504.830(d)) direct the GO to consider the grievance and report findings and recommendations to the Chief Administrative Officer ("CAO"), who is defined to be highest ranking official of a correctional facility (20 Ill. Admin. Code § 504.802). The CAO then advises the inmate of his or her decision within two months where reasonably feasible under the circumstances. 20 Ill. Admin. Code § 504.830(d).

If the inmate is not satisfied with the CAO's decision, he may appeal in writing to the Director of the IDOC within 30 days. 20 Ill. Admin. Code § 504.850(a). After reviewing the grievance and the responses by the GO and the CAO, the Director decides whether the grievance requires a hearing before the Administrative Review Board ("ARB") or is without merit or can be resolved without a hearing. 20 Ill. Admin. Code § 504.850(b). If the grievance proceeds to a hearing, the ARB submits a written report to the Director who reviews the findings and recommendations of the ARB and makes a final determination within 6 months. 20 Ill. Admin. Code § 504.850(b)-(f).

Defendants contend, among other things, that they are entitled to judgment as a matter of law under the Prisoner Litigation Reform Act ("PLRA") because Plaintiff failed to exhaust his administrative remedies before filing this lawsuit. Pursuant to the PLRA, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e; see also *Pozo v. McCaughtrey*, 286 F.3d 1022, 1023-24 (7th Cir. 2002) ("Unless the prisoner completes the administrative process by following the rules the state has established for that process, exhaustion has not occurred."). In *Pavey v. Conley*, 544 F.3d 739, 740 (7th Cir. 2008), the Seventh Circuit addressed "whether a prisoner plaintiff in a suit for damages governed by the

6

Prison Litigation Reform Act is entitled by the Seventh Amendment to a jury trial on any debatable factual issues relating to the defense of failure to exhaust administrative remedies." The court answered that question in the negative, holding that the district judge must determine as a threshold matter, before proceeding to disposition on the merits (or, in most cases, even discovery), whether "the prisoner has properly exhausted his administrative remedies." *Id.* at 741-42; see also *Hamilton v. Allen*, 2009 WL 395470, at *2 (N.D. Ill. Feb.18, 2009) ("The issue of exhaustion of available administrative remedies is a threshold inquiry for the court").

The purpose of the exhaustion requirement is to afford "corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002); see also *Jones v. Bock*, 549 U.S. 199, 219 (2007) (noting that exhaustion allows "a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record"); *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) ("The sole objective of § 1997e(a) is to permit the prison's administrative process to run its course before litigation begins"). Because failure to exhaust is an affirmative defense, the burden of proof lies with the prison officials, not with the plaintiff. *Conyers v. Abitz*, 416 F.3d 580, 584 (7th Cir. 2005).

The Seventh Circuit "has taken a strict compliance approach to exhaustion. A prisoner must properly use the prison's grievance process. If he or she fails to do so, the prison administrative authority can refuse to hear the case and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809. Accordingly, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). Moreover, there is no futility

7

exception to PLRA's exhaustion requirement. See *Perez v. Wisconsin Dept. of Corrections*, 182 F.3d 532 (7th Cir. 1999); *Massey v. Helman*, 196 F.3d 727 (7th Cir. 2000). "[I]f a prison has an internal administrative grievance system through which a prisoner can seek to correct a problem, then the prisoner must utilize that administrative system before filing a claim. The potential effectiveness of an administrative response bears no relationship to the statutory requirement that prisoners first attempt to obtain relief through administrative procedures." *Massey*, 196 F.3d at 733. In short, "[e]xhaustion is required even if the prisoner believes his efforts in securing relief will be futile or if the administrative authority has no power to grant the requested relief." *Obriecht v. Raemisch*, 517 F.3d 489, 492 (7th Cir. 2008) (citations omitted).

As noted above, the PLRA obliges a prisoner who wishes to complain about prison conditions to forestall the filing of a lawsuit "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (emphasis added); see also *Riccardo v. Rausch*, 375 F.3d 521, 524 (7th Cir. 2004) (failure to follow state rules about the time and content of grievances "means failure to use (and thus to exhaust) available remedies") (emphasis added). While the case law on what constitutes "availability" is not well developed, it is clear that a plaintiff's claims will not be dismissed if "prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." *Dole*, 438 F.3d at 809-10; see also *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002).

Because Defendants seek summary judgment on the issue of exhaustion, the Court will draw all reasonable inferences in the light most favorable to Plaintiff. *Schaefer v. Bezy*, 336 Fed. Appx. 558, 560 (7th Cir. 2009) (citations omitted). Therefore, to be entitled to summary judgment, Defendants "must do more than point to a lack of evidence in the record; rather they

must 'establish affirmatively' that the evidence is so one-sided that no reasonable factfinder could find that [the plaintiff] was prevented from exhausting his administrative remedies." *Id.*

In the instant case, the parties agree as to the following: Plaintiff filed his grievance on January 23, 2008; the GO found Plaintiff's claims of staff misconduct to be unsubstantiated on March 10, 2008; and the Warden concurred with the GO's findings and informed Plaintiff that he would need to appeal to the ARB in writing within 30 days on March 14, 2008. However, the parties disagree as to what happened next. Relying solely on the affidavit of Sherry Benton, Chairperson of the Office on Inmate Issues, Defendants claim that the ARB did not receive Plaintiff's grievance until May 20, 2009, more than a year after the Warden's response. In his response, Plaintiff has set forth the steps that he claims to have taken to exhaust his administrative remedies. Of particular significance is Plaintiff's claim that he requested another copy of his grievance from the GO, which he placed in the bars of his cell for mail pickup on April 8, 2008. When Plaintiff received no response from the ARB, he wrote three status letters to the ARB and filed a complaint regarding a lack of response to his grievance with the Governor's Office.

The lack of any documentary evidence that Plaintiff mailed his grievance to the ARB in April 2008 is not dispositive; the Court must credit Plaintiff's statement that he sent a grievance directly to the ARB on April 8, 2008, and received no response in the required six-month time frame. See *Henderson v. Brown*, 2009 WL 2496559, at *3 (N.D. Ill. Aug. 11, 2009). The Court also credits the careful documentation that Plaintiff kept as to each step he took in attempting to exhaust his administrative remedies. Taken as a whole, the record at this stage of the proceedings permits an inference that – through inadvertence, negligence, or loss – Plaintiff's grievance, which he avers he placed in the bars for pick-up, either was not picked up, never made

9

it to the postal system, or was lost after being posted.[3] See *id.* And, in view of the disputes of material fact noted above, the Court must deny Defendants' motion for summary judgment on the exhaustion issue (see *Schaefer*, 336 Fed. Appx. at 560 ("Summary judgment may not be used to resolve a swearing contest between litigants")) and set this matter for status to discuss, among other things, any discovery that may need to be taken on the exhaustion issue and whether an evidentiary hearing will be needed to resolve the exhaustion question (see *Pavey*, 544 F.3d at 742; *Schaefer*, 336 Fed. Appx. at 561; *Henderson*, 2009 WL 2496559, at *5; *Doss v. Gilkey*, 649 F. Supp. 2d 905, 912 (S.D. Ill. 2009)).

### III. Conclusion

For the foregoing reasons, Defendants' motion for summary judgment [19] is granted in part, in regard to Plaintiff's claim of deprivation of food (as to which Plaintiff does not object), and denied in part, in regard to Plaintiff's claim of deliberate indifference to his serious medical needs.

Dated: January 22, 2010

Robert M. Dow, Jr., Judge
United States District Court

---

[3] In his motion for leave to file attached documents to the complaint, Plaintiff claims that on April 10, 2008, mail was discovered misplaced in a trash can of E-House.